UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

     Plaintiff,

     -v-

SHANNAWAZ[1] BAIG,

     Defendant.
-------------------------------------------------------X

FEUERSTEIN, S., Senior District Judge:

**FILED**
**CLERK**

8/11/2020 2:52 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Case No. 13-cr-0351 (SFJ)
**Order Denying Petition for**
**Writ of *Coram Nobis***

I.    <u>Introduction</u>

     Defendant Shannawaz Baig (hereafter, "Shannawaz") petitions this Court for a writ of

*coram nobis* seeking to vacate his conviction on the grounds that the restitution order imposed

was unsupported by law and that the Government withheld exculpatory evidence by failing to

disclose a lack of proof that Shannawaz participated in the charged conspiracy during the

applicable limitations period.  (*See* ECF No. 334; hereafter, the "Petition".)  The Government

opposes Shannawaz's Petition (*see* ECF No. 339; hereafter, the "Opposition" or "Opp'n") stating

his "argument concerning restitution amounts to a belated attempt to reargue what he already

raised on appeal," and "[h]is *Brady* claim constitutes an attempt to repackage his decision to

plead guilty and forgo further discovery as a constitutional violation" which "is wholly without

legal or factual support."  (*Id.* at 6.)  For the reasons that follow, the Petition is denied.

---

[1]  In the record, the spelling of Shannawaz Baig's first name varies; the Court employs the
spelling of his name as contained in the Indictment.

II.     Relevant Background

    A. *Factual Background*[2]

Between January 2000 and June 2013, Shannawaz participated in a scheme, organized and led by his brother Farrukh Baig ("Farrukh"), to employ more than one hundred undocumented workers at various 7-Eleven franchise stores (hereafter, the "Farrukh-Led Scheme") that were owned or controlled by Farrukh and that were located in New York and Virginia (hereafter, the "Farrukh Stores"[3]).  Shannawaz was fully aware of the scope of the scheme.  For his part, Shannawaz, managed the Farrukh Store located in Greenport, Long Island until November 2007, as well as co-owned property with Farrukh were some of the workers were harbored.  In November 2007, Shannawaz moved to Virginia Beach, Virginia, where he bought a 7-Eleven franchise store with a loan guaranteed by Farrukh (hereafter, the "Virginia Beach Store").

    B. *Procedural Background*

        1. The Indictment

On June 12, 2013, a grand jury indicted Shannawaz, Farrukh, Farrukh's wife, Zahid Baig (Shannawaz's and Farrukh's brother), as well as Malik Yosaf, Ramon Nanas and Tariz Rana, on various charges related to the Farrukh-Led Scheme and carried out at the Farrukh Stores, including, *inter alia*, "Conspiracy to Conceal and Harbor Illegal Aliens for Financial Gain" (Count II).  (*See* Indictment, ECF No. 1.)  Based upon the Indictment, on June 17, 2013, Shannawaz and the other defendants were arrested.

---

[2]  The Court assumes the parties' familiarity with the underlying facts of this case and provides the following summary for the reader's convenience.

[3]  The Farrukh Stores are those identified in the Indictment.  (*See* ECF No. 1, ¶2 (identifying the 7-Eleven stores involved in the charged conspiracy).)

2.  <u>The Plea Agreement and Plea Allocution</u>

On September 22, 2014, Shannawaz entered into a plea agreement with the Government. Among other things, Shannawaz agreed to plead guilty to Count II of the Indictment (*see* Presentence Report "PSR" (ECF No. 184) at 1) and that any restitution was "[t]o be determined by the Court (18 U.S.C. §§ 3663 and 3663A)."  (*See* Plea Agreement, ¶1(e).)  Shannawaz further agreed to waive certain rights, including, *inter alia*, his right to challenge his conviction or sentence, pursuant to 28 U.S.C. § 2255 *or any other provision*, if the Court imposed a term of imprisonment of 24 months or less," and his right to "*additional disclosure from the government in connection with the guilty plea.*"  (Plea Agreement, ¶4 (emphasis added).)

On the same day, Shannawaz consented to the Magistrate Judge accepting his plea.  (*See* Sept. 22, 2014 Plea Hr'g Tr. (ECF No. 159; hereafter, "Plea Tr.") 3:19-4:1.)  During the plea hearing, Magistrate Judge Locke asked Shannawaz, *inter alia*, whether he had read the Plea Agreement and discussed it with his attorney, to which Shannawaz affirmatively replied (*see id.* at 9:1-4).  Thereafter, the Government stated that, as part of the Plea Agreement, Shannawaz was agreeing to restitution in an amount to be determined by the Court (*see id.* at 9:15-16).  When asked if he was aware of the elements of the crime to which he was pleading guilty, Shannawaz confirmed that he was.  (*See id.* at 9:21-10:1; *see also id.* at 10:8-15.)  Shannawaz further confirmed that he did not have any questions he wished to raise regarding "the charges, [his] rights, or anything else related to this matter[.]"  (*Id.* at 12:25-13:3.)  Thereafter, of his free will, Shannawaz voluntarily plead guilty to Count II of the Indictment (*see id.* at 13:15-14:5), specifically confessing:

> [SHANNAWAZ]:  From January 1, 2000 to November 1, 2007, I agreed with others to employ and harbor undocumented aliens at the 7-Eleven franchise store located in the Town of Greenport, Suffolk County, New York, and that my role in this agreement was

> as the manager of this 7-Eleven franchise store that was owned by
> Farrukh Baig during this time period.  This agreement was also
> made to profit from the labor and services provided by these aliens.

(*Id.* at 14:9-16.)  Of import, Magistrate Judge Locke followed this allocution with a colloquy

with the Government:

> THE COURT:  Okay.  Thank you.  I just have one question for my
> own clarification.  I'm noticing in the allocution the date comes up
> as November 1, 2007.  What's the statute of limitations?
>
> [THE GOVERNMENT]:  Your Honor, the statute of limitations is
> five years.  However, the conspiracy continue[d] on until 2013
> including - - if you need a further colloquy, just let me know.
> However, in broad strokes Mr. Baig went to work and manage[d]
> another store in Virginia along with other of his brothers *and some
> of the misappropriated identities went down to Virginia* as well and
> were being used there certainly as recently as 2012.
>
> THE COURT:  *The idea being that the conspiracy is ongoing to
> the point within the statute of limitations but the conduct discussed
> here happened up until 2007.*  Is that correct?
>
> [THE GOVERNMENT]:  *That's what he's allocuting to here
> today*.

(*Id.* at 15:4-20 (emphasis added).)  Thereafter, the Magistrate Judge recommended that the

undersigned accept Shannawaz's guilty plea.  (*See id.* at 15:20-25; *see also* ECF No. 143.)

Significantly, before concluding the plea hearing, Magistrate Judge Locke asked the parties four

times whether they had any further issues to address.  (*See id.* at 15:25 ("Anything else?"); 16:8

("Anything else, [defense counsel]?"); 16:11 ("Anything else from either side?"); and 16:14

("[Defense counsel], anything else?").)  Other than addressing the tentative sentencing date, no

issues were raised.

### 3. Presentencing and Sentencing

Thereafter, the Probation Department prepared a presentencing report ("PSR")(*see* ECF

No. 184) stating, *inter alia*, that Shannawaz "agreed to pay restitution in an amount determined

by the Court." (PSR, ¶25.) It further reported that Shannawaz: "did not supervise other criminal participants," but his "involvement in the instant offense was significant, as he managed a number of the 7-Eleven stores" (*id.* at ¶28); had purchased the Virginia Beach Store, which "was financed by a bank loan . . . (for \$249,000), guaranteed by [Shannawaz]'s brother Farrukh Baig"[4] (*id.* at ¶87); and, owned real property in Sag Harbor, New York, with Farrukh (*see id.* at ¶93; *see also id.* at ¶56). The PSR was amended three times, with each addendum addressing various arguments Shannawaz raised regarding the imposition of restitution. (*See* ECF No. 219 (PSR Addendum) (including updated restitution amount of approximately \$1,250,000; noting Shannawaz's claim of minimal involvement in conspiracy and complaint that the Probation Department did not adequately investigate victims' alleged losses); ECF No. 249 (PSR Second Addendum)(noting Shannawaz's: continued attempt to minimize his conduct; unadorned complaint that he is not accountable for restitution; repeated complaint about the Probation Department's lack of contact with victims); and ECF No. 251 (PSR Third Addendum)(suggesting that Shannawaz's relentless reiteration of minimal involvement in the conspiracy is tantamount to denial of acceptance of responsibility and highlighting Shannawaz's attempt to evade the restitution provision in his Plea Agreement that he would pay restitution in the amount determined by the Court).)

In its Sentencing Memorandum (*see* ECF No. 208), the Government's overarching position was that "[i]t appears that Shannawaz does not accept responsibility for the crimes of the entire conspiracy. Also, unlike all of the other conspirators, Shannawaz Baig does not agree that he owes any restitution to the employee victims of the scheme." (ECF No. 208 at 1-2; *see*

---

[4] The Probation Department also reported that "the Government has information indicating that Farrukh Baig owns/operates additional 7-Eleven stores, but currently they do [*sic*] not have any information indicating that criminal conduct occurred at the other stores." (PSR, ¶12.)

*also id.* at 6 (Part VIII) ("Shannawaz Baig argues that he is only responsible for restitution for the specific conduct to which he allocated during his guilty plea.").)  However, since Shannawaz's "role [wa]s very different from some of his codefendants" as he "did not have broad supervisory authority over several stores" and "did not earn millions of dollars from this fraud" (*id.* at 1; *see also id.* at 4 (Part II(A))), the Government requested the "Court issue a restitution order of $1,253,343.48" (*id.* at 6 (Part VIII)), which request was supported by the same sealed appendix submitted in support of the restitution amount that was imposed upon his brother, Zahid, and incorporated into Zahid's Judgment Order.  (*Cf.,* ECF No. 208-1 (sealed) (hereafter, "Appendix A") (identifying the victims of the charged conspiracy and the amounts due to them), *with* ECF No. 197-1 (sealed) (Appendix A, *attached to* Government's Sentencing Memorandum regarding Zahid); *see also* ECF No. 214-2 (sealed) (Appendix A, *attached to* Zahid's Judgment).)

Indeed, in his Sentencing Memorandum, Shannawaz argued, *inter alia*, that: unlike Farrukh, he did not gain any financial reward from the conspiracy, which was "precisely why" he "moved to Virginia Beach, Virginia to acquire his own 7-Eleven franchise store," albeit with a loan guaranteed by Farrukh (ECF No. 247 at 2); and, he should not be subjected to the same restitution as his co-conspirators, because of his *de minimus* role in the conspiracy, *i.e.*, restitution imposed upon him should be limited to losses arising from the Greenport 7-Eleven store while he was its manager.  (*See id.* at 3-4, 7.)  Shannawaz did not raise any objections to the PSR based upon the Government's alleged failure to comply with its *Brady* disclosure obligations prior to his entering the Plea Agreement or pleading guilty.  (*See id., in toto*.)

On September 10, 2015, Shannawaz was sentenced to time served, three years of supervised release and, as an additional term of his supervised release, the imposition of

restitution, which was to "be distributed to the victims as set forth in the sealed Appendix A associated with this order," *i.e.*, the Appendix A attached to the Government's Sentencing Memorandum and which, like Zahid's Judgment, was also attached to Shannawaz's Judgment. (*See* ECF No. 254 (Sept. 10, 2015 Minute Entry); ECF No. 256 (Shannawaz Judgment) at 4, ¶1, and 5-6 (hereafter, the "Restitution Order"); ECF No. 256-2 (Appendix A).)

### 4.  The Appeal

On October 20, 2015,[5] Shannawaz appealed the Restitution Order (*see* ECF No. 261), arguing:

> that the district court erred by: (1) improperly imposing restitution under the Mandatory Victims Restitution Act ("MVRA"); (2) failing to hold an evidentiary hearing; (3) failing to comply with the procedures set forth under 18 U.S.C. § 3664; and (4) declining to apportion [Shannawaz]'s liability given his de minimis role in the conspiracy.

*United States v. S. Baig*, 669 F. App'x 587, 587, 2016 WL 6128189 (2d Cir. Oct. 20, 2016)(summary order).  The Circuit Court ruled it did not need to consider Shannawaz's MVRA argument, because, as he "conceded below, the district court had discretionary authority to impose restitution as a condition of supervised release pursuant to 18 U.S.C. §§ 3563(b)(2), 3583(d)." *Id.* at 588 ("[T]he judgment provides that payment of the ordered restitution shall be a condition of supervised release, thus in effect invoking that source of authority as the basis for the restitution order.").  It also disagreed with Shannawaz's claim that "an evidentiary hearing was required to resolve the amount of victim losses suffered as a result of [his] conduct" since he waived an evidentiary hearing and, in any event, he was provided ample opportunity to present the grounds for his objection, which he utilized.  *See id*. at 588.  Further, the Circuit Court found

---

[5]  While dated October 16, 2015, Shannawaz's Notice of Appeal was filed on October 20, 2015.

Shannawaz's § 3664 procedures challenge without merit as: "it was neither practicable nor feasible for the probation officer to contact and interview over 100 potential victims;" the "proposed restitution amount was based on the investigatory findings of the U.S. Department of Labor, which were in turn based on interviews with victims and audits of to the relevant payroll records;" and, the Government submitted a summary of those records, which "detail[ed] the specific amounts of loss attributable to almost 100 victims." *Id.* at 588-89.  Therefore, this Court's consideration of that summary documentation in fashioning Shannawaz's Restitution Order was not erroneous.  *See id.* at 589 (citing *United States v. Pickett*, 387 F. App'x 32, 36 (2d Cir. July 20, 2010)(summary order)).  Finally, because "the district court's decision whether to apportion restitution among defendants or impose joint and several liability 'is a discretionary one,'" which, the Second Circuit noted, Shannawaz conceded below, it found no error in this Court's decision to "order[ Shannawaz] jointly and severally liable for the full restitution amount." *Id.* (quoting *United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004) (citing 18 U.S.C. § 3664(h)).

    *C.  Shannawaz's Coram Nobis Petition*

    On May 7, 2018, Shannawaz filed the instant Petition seeking a writ of *coram nobis* to vacate his conviction and "correct a 'compelling' error and prevent a manifest injustice from occurring."  (Petition at 1.)  At its core, Shannawaz's Petition seeks relief from the Restitution Order.

        1.  <u>Shannawaz's Position</u>

    Shannawaz makes two arguments that there are compelling circumstances warranting the granting of *coram nobis* relief: that the Restitution Order imposed upon him is for conduct for which he is not liable (*see* Support Memo at 4-7); and, that the underlying conviction was

procured in violation of his due process rights, since the Government failed to turn over supposed exculpatory *Brady* materials in its possession.  (*See id.* at 7-13.)  In support of his first argument, Shannawaz principally contends he "is entitled to have the rule of *Honeycutt v. United States* applied retroactively to his conviction," since in that case, the Supreme Court limited the scope of joint and several liability of co-defendants.  (*Id.* at 4 (citing *Honeycutt* case, __ U.S. __, 137 S. Ct. 1626 (2017).)  He would also have the Court find support for his position relying upon a recent Seventh Circuit case, *United States v. White*, 883 F.3d 983 (7th Cir. 2018).  (*See id.* at 5-7.)  Shannawaz also argues that the Restitution Order is "clearly inappropriate" considering his "*de minimis* role in the alleged conspiracy," and that holding him "jointly and severally liable for this restitution is unconstitutional."  (*Id.* at 7.)  Shannawaz premises this argument on the Government's "refusing to disclose documentary evidence that illustrates that at least six of the 'stolen identities' alleged to have been used in [his] store in Virginia were not used on [Shannawaz]'s payroll at his Virginia Beach 7-Eleven franchise at all."  (*Id.* at 8 (citing "Letter from Robert W. Gaffey, Esq., dated July 28, 2015, and Letter from Midhat Syed, Esq., dated Jan. 5, 2016").[6])  He contends that the Virginia Beach Store is "the very store used by the Government to connect [him] to the conspiracy after the applicable statute of limitations period has passed," which store was not included in the Indictment.  (*Id.* at 9.)  Shannawaz further asserts that this evidence would affirmatively establish he "had no involvement in the alleged conspiracy after he moved to Virginia Beach in 2007."  (*Id.* at 10; *see also id.* at 11 ("The Petitioner has, from the beginning of his case, maintained that he left the conspiracy in 2007, and his assertion will be proven by the exculpatory information contained in the payroll records.").)

---

[6]  Neither of these letters appear to be part of the record and have not been provided as exhibits to the Petition.

Thus, disclosure of this evidence would have resulted in a different outcome, with Shannawaz having declined to plead guilty to the conspiracy.  (*See id.* at 12.)

As to the timing in seeking this relief, Shannawaz advances two similar arguments, *to wit*, that: it was not until the Supreme Court's 2017 *Honeycutt* decision, which "limited the scope of co-conspirator liability by restricting joint and several liability to each co-conspirator's individual ownership interest and personal benefit in the tainted property" that this argument could be raised (*see id.* at 13-14); and, he "could not have made the argument of a *Brady* violation at an earlier date because of the fact that he was simply unaware of the potential exculpatory evidence at the time of his plea proceeding" (*id.* at 15 (further arguing his plea could not be considered knowing and voluntary).)  He raises a third argument supporting the timing of this *coram nobis* Petition:  "Because Petitioner's previous arguments regarding the Government's withholding of necessary evidence have been held to be without merit [by the Circuit Court in its 2016 Summary Order, 669 F. App'x 587], Petitioner is left to seek such 'last resort' relief in a *Coram Nobis* action."  (*Id.* at 18 ("Petitioner could not have properly sought *Coram Nobis* relief until receiving a final ruling on his appeal . . . .")(citations omitted).)

Finally, in addressing his suffering of continued legal consequences as a result of his conviction, Shannawaz maintains, *inter alia*, that "he and his family have undergone significant financial hardship" (*id.* at 18) and that he continues to experience negative consequences, such as having "great difficulty in obtaining legitimate employment" (*id.* at 19).

2.  The Government's Position

The Government initially notes that Shannawaz "has waived any right to petition for relief," arguing that the "collateral review waiver in his plea agreement should be enforced" with this Petition being dismissed.  (Opp'n at 7-8.)  However, if the Court should review Shannawaz's

claims, the Government contends that Shannawaz is not entitled to *coram nobis* relief since he has failed to present any compelling circumstances warranting this extreme remedy.  (*See id.* at 8 (asserting the record demonstrates Shannawaz: "was fully aware of the factual and legal issues presented by the charges," "committed the crime of which he was convicted," "admitted his guilt under the term of a favorable plea agreement," "was represented by able counsel," and "completed the full term of his sentence") (citing *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996)).)

The Government further argues that Shannawaz has not shown "'sound reasons for failing to seek appropriate earlier relief' or why the earlier denial of such relief should not be final."  (*Id.* (quoting *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014)).)  More specifically, it contends that "[s]ince his guilty plea, [Shannawaz] clearly has been aware of his claim that the Court's restitution order holds him accountable for a broader range of conduct than he committed; he made the same arguments on appeal as he makes now, and the Court of Appeals rejected them."  (*Id.* at 8-9 (citing *S. Baig*, 669 F. App'x at 589 ("Apportionment" subsection)); *see also id.* at 9 ("As the Court of Appeals noted in its decision on the [P]etitioner's appeal, Second Circuit law is clear that the apportionment of restitution is a matter for the discretion of the district court." (citation omitted)).)  The Circuit Court's decision "put[s] the issue to rest" and Shannawaz's reliance on *Honeycutt* to overcome that finality is unavailing since that decision addresses forfeiture orders, not restitution orders and, in any event, is not to be applied retroactively to actions seeking to collaterally challenge such orders.  (*See id.* at 9-10 (citing *Honeycutt*, 137 S. Ct. 1626; further citation omitted).)

Moreover, to the extent Shannawaz claims he has a statute of limitations argument, the Government contends that claim was apparent as soon as Shannawaz was charged, giving him

"ample opportunity to put the [G]overnment to its burden of proof . . . before entering his guilty plea," and Shannawaz did not raise this possible defense after the Magistrate Judge specifically questioned the Government about the statute of limitations issue immediately after Shannawaz's plea allocution. (Opp'n at 10.) Furthermore, as part of his Plea Agreement, Shannawaz waived his right to additional discovery from the Government in connection with his guilty plea. (*See id.*) In any event, Petitioner has not offered any valid reason for waiting so long to raise this issue as to which, as an experienced franchise manager and owner, he should have been aware. (*See id.* at 11-12.)

In addition to being untimely, the Government maintains that Shannawaz's *Brady* claim is meritless as it is based upon his misconstrued understanding of conspiracy. (*See id.* at 13; *see also id.* at 15, notes 2 & 3.) More particularly, the Government argues that: it did not need to show that the stolen identities were used in the Virginia Beach Store; rather, it needed only to demonstrate that the conspiracy operated within the five-year period preceding the Indictment "'and a conspirator knowingly committed at least one overt act in furtherance of the scheme within that period;'" and, "[i]f a co-conspirator does not withdraw from a conspiracy, '[his] participation in the conspiracy is presumed to continue until the last over act by any of the conspirators.'" (Opp'n at 13 (quoting *United States v. Salmonese*, 352 F.3d 608, 614 (2d Cir. 2003), and *United States v. Katz*, 601 F.2d 66, 68 (2d Cir. 1979)(*per curiam*), respectively).) Because Shannawaz argues only that "he stopped participating in" the Farrukh-Led Scheme, but has failed to produce affirmative evidence that he withdrew from it, his "Brady claim should be rejected." (*Id.* at 14.)

III.   <u>Discussion</u>

   *A. The Applicable Standard*

The writ of *coram nobis* is an "extraordinary remedy" that "issues only in extreme cases."  *United States v. Denedo*, 556 U.S. 904, 916 (2009).  "Coram nobis is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid."  *Foont*, 93 F.3d at 78 (internal quotations and alterations omitted); *see also Fleming v. United States*, 146 F.3d 88, 89-90 (2d Cir. 1998) (writ is "a remedy of last resort").  Traditionally, the writ was "available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict."  *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (quoting *United States v. Mayer*, 235 U.S. 55, 67-68 (1914)).  A writ of *coram nobis* will "issue only where extraordinary circumstances are present."  *Nicks v. United States*, 995 F.2d 161, 167 (2d Cir. 1992).

A petitioner seeking *coram nobis* relief "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ."  *Kovac*, 744 F.3d at 49.  However, a court reviewing a *coram nobis* petition "must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner."  *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000); *see also United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018).

B. *The Present Matter*

1. The Waiver of Collateral Review Per the Plea Agreement

"The enforceability of an appellate waiver made 'knowingly, voluntarily, and competently' is a longstanding principle of Second Circuit law." *United States v. Bilal*, 941 F. Supp.2d 397, 401 (S.D.N.Y. 2013) (quoting *United States v. Riggi,* 649 F.3d 143, 147 (2d Cir.2011) (internal quotation omitted); citing *United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir.2001) (*per curiam*)). Likewise, "[w]aivers of the right to collaterally attack a sentence" are enforceable. *Id.* (citing *Garcia–Santos v. United States,* 273 F.3d 506, 509 (2d Cir.2001)); *see also, e.g., United States v. Brickhouse*, No. 14-cv-963, 2017 WL 1049509, at *5-6 (S.D.N.Y. Mar. 16, 2017)(discussing enforceability of knowing and voluntary waiver of right to collateral challenge sentence).

In this instance, the Magistrate Judge thoroughly questioned Shannawaz about his Plea Agreement, ensuring Shannawaz had discussed that Agreement with his counsel and understood it, including that he was waiving certain rights, among which was the right to collaterally challenge the sentence the Court would impose upon him, and that, *inter alia*, restitution could be ordered. Before accepting Shannawaz's guilty plea, the Magistrate Judge conducted a thorough Criminal Rule 11 allocution of Shannawaz, ensuring that he was knowingly and voluntarily pleading guilty. Because the record demonstrates that:

> at his allocution, [Shannawaz] affirmed that he (1) had discussed
> the case and the consequences of pleading guilty with his attorney;
> (2) had read and discussed the plea agreement with his attorney;
> (3) had discussed the Guidelines with his attorney; (4) had waived
> his right to appeal or otherwise challenge a within- or below-
> Guidelines sentence; and (5) knew that [the Court could] order
> restitution as part of his sentence[,] . . . his waiver of the right to
> challenge his sentence was knowing, voluntary, and therefore
> enforceable.

14

*Bilal*, 941 F. Supp.2d at 402.  Magistrate Judge Locke's statute-of-limitation colloquy with the Government after Shannawaz's plea allocution does not alter this conclusion, since in response to the Magistrate Judge's four inquires thereafter as to whether the parties wished to address anything further, Shannawaz never questioned the Government's statute-of-limitation explanation.  (*Cf., e.g.*, Opp'n at 10 ("[E]ven if any statute of limitations issue was not apparent beforehand, the question was raised during the [P]etitioner's guilty plea proceeding, yet he stood silent and did not seek to withdraw his plea . . . .").)  Accordingly, Shannawaz's waiver of a collateral challenge to his sentence, which included ordering restitution as a condition of his supervised release, is enforceable.

Even if, *arguendo*, Shannawaz's *coram nobis* Petition were not foreclosed by his waiver, the Court finds his arguments would fail on the merits since Shannawaz has not: identified a fundamental error rendering the Restitution Order invalid; offered a satisfactory explanation for his delay in challenging that Order; or shown that he continues to suffer legal consequences from his conviction that could be remedied by *coram nobis* relief.  *See, e.g.*, *United States v. Siwek*, No. 3:14-cr-183, 2018 WL 3404144, at *3 (D. Conn. July 12, 2018)("The burden is on the petitioner to show 1) 'circumstances compelling such action to achieve justice'; 2) 'sound reasons . . . for failure to seek appropriate earlier relief'; and (3) that the petitioner 'continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" (quoting *Foont*, 93 F.3d at 79)); *see also United States v. Molina*, 15-cr-65(4), 2018 WL 3918178, at *2 (S.D.N.Y. Aug. 15, 2018) ("Molina's [*coram nobis*] petition fails for two independent reasons: First, he has failed to demonstrate a fundamental error rendering the Court's restitution order invalid, and second, he has failed to show sound reasons for his delay in

seeking relief."). As elucidated below, this inability to demonstrate the components comprising

a petitioner's *coram nobis* burden would compel the Court's denial of Shannawaz's Petition.

2. <u>The Lack of Fundamental Error</u>

(*a*.) *Regarding the Restitution Order*

"While the Second Circuit has not explicitly held that a writ of *coram nobis* is available

to challenge a restitution order in a criminal case, it has noted that the writ may be available to

correct '*fundamental* errors' made in connection with a conviction." *Siwek*, 2018 WL 3404144,

at *3 (quoting *Kaminski v. United States*, 339 F.3d 84, 90 (2d Cir. 2003) (emphasis in original);

citing *Rutigliano*, 887 F.3d at 108 (assuming, but not deciding, that "*coram nobis* might be

invoked collaterally to challenge the restitution component of a criminal sentence"); *Bilal*, 941 F.

Supp.2d at 404 (construing a § 2255 motion, to the extent that it requested an amendment to a

restitution order, as a petition for a writ of *coram nobis*). In *Siwek*, the court found the petitioner

did not meet his burden of demonstrating that a fundamental error occurred in his criminal

proceeding and, therefore, there was no need to "decide whether a petition for *coram nobis* [wa]s

an appropriate vehicle" to amend the restitution order imposed. *Id.*

In the instant matter, the Court of Appeals has already held that since the Restitution

Order was imposed as a condition of Shannawaz's supervised release, this Court did not err in

imposing the Restitution Order. *See S. Baig*, 669 F. App'x at 588 ("As Baig conceded below, the

district court had discretionary authority to impose restitution as a condition of supervised

release pursuant to 18 U.S.C. §§ 3563(b)(2), 3583(d)."). Moreover, because the Restitution

Order amount was supported by sufficient documentation, the Circuit Court found its imposition

was not improper. *See id.* at 588-89. That ruling eviscerates Shannawaz's current attempt to

show some fundamental error in the imposition of the Restitution Order. It is also inapposite to

16

Seventh Circuit's *White* case, 883 F.3d 983, non-binding case law advanced by Shannawaz in support of his argument that he is being wrongly held responsible for the full restitution amount (*see* Support Memo at 6-7), since that court was addressing a challenge to a restitution order imposed pursuant to the MVRA and which it held had been erroneously imposed because of a lack of evidentiary support for the amount imposed. *See White*, 883 F.3d at 992.

(*b*.) *Regarding the Alleged <u>Brady</u> Violation*

Shannawaz's claim of a Fifth Amendment due process violation is equally unpersuasive. He argues that the Government had exculpatory evidence which would have shown that his move to Virginia ended his participation in the Farrukh-Led Scheme, *i.e.*, the lack of evidence that stolen identities were used in his Virginia Beach Store (hereafter, the "Lack of Evidence"). Shannawaz contends that if he knew that the Government had this Lack of Evidence, he would not have pled guilty to the conspiracy charge, Count II of the Indictment, because he would have had a statute of limitations defense. Not so.

As the Government argues, Shannawaz's statute of limitations "claim became clear to the [P]etitioner as soon as he was charged, almost seven years after the time he asserts that he exited the conspiracy alleged in the [I]ndictment," and he "had ample opportunity to put the government to its burden of proof on that ground before entering his guilty plea." (Opp'n at 10.) Indeed, it is reasonable to assume that, as the owner of the Virginia Beach Store, who presumably knew, directed and/or inputted employee information into the 7-Eleven company payroll system, Shannawaz would have evidence that countered the Government's Lack of Evidence and which he could have raised during his plea negotiations, plea allocution, or

sentencing.[7]  As Shannawaz, himself, noted, "There is no *Brady* violation where a defendant is *aware* of facts allowing him to take advantage of exculpatory evidence."  (Petition at 15 (quoting *Cox v. Ebert*, No. 06-cv-3159, 2010 WL 3119445, *6 (S.D.N.Y. Aug. 5, 2010) (emphasis added by Petitioner)).)  In any event, having accepted the Government's Plea Agreement, Shannawaz explicitly "waive[d] any right to additional disclosure from the [G]overnment in connection with the guilty plea."  (Plea Agreement, ¶4.)

Moreover, when Magistrate Judge Locke addressed the statute of limitation issue with the Government following Shannawaz's plea to participating in the Farrukh-Led Scheme from 2000 to November 2007, Shannawaz "stood silent and did not seek to withdraw he plea;" similarly, he did not "otherwise raise the statute of limitations defense prior to sentencing, on appeal or any time thereafter."  (Opp'n at 10 (arguing further that Shannawaz did not file a "motion to compel discovery on any subject").)  The Court rejects Shannawaz's contentions that: it was "not incumbent" upon him "to jump in during a discussion the [Government wa]s having with the Court" about the statute of limitations; or, after "[h]e made his statement about his involvement and what he was pleading to," he "was never asked to clarify about the statute of limitations or the added colloquy added to by the Government."  (Reply at 4.)  After that discussion was precisely when Shannawaz should have challenged the Lack of Evidence and raised the statute of limitations issue, especially since the Magistrate Judge directly afforded him several opportunities to do so after the colloquy.  As the Government aptly contends, "[a] writ of *coram*

_____

[7]  (*Cf.*, Opp'n at 11 (arguing as "incredible at best" "[t]hat an experienced franchise manager and owner [such as Shannawaz] could have been unaware of documentary payroll records or that such payroll records would or would not contain evidence of stolen identities").)

18

*nobis* is not properly used to belatedly challenge a factual question that the petitioner declined to pursue pre-plea and pre-sentencing."  (Opp'n at 10-11.)

(*c*.)  *Regarding the Alleged Withdrawal from the Conspiracy*

Finally, notwithstanding Shannawaz's insistence that his involvement in the Farrukh-Led Scheme ended in 2007 when he moved to Virginia, he has not overcome the legal presumption, which enures to the Government, that he continued to participate in the conspiracy even after his 2007 Virginia move and during the five-year period preceding the Indictment.

> [I]t is well-settled that withdrawal from a conspiracy is an affirmative defense for which the defendant bears the burden of proof at trial.  *United States v. Pizzonia,* 577 F.3d 455, 466 (2d Cir. 2009); *United States v. Flaharty,* 295 F.3d 182, 192 (2d Cir. 2002). Mere cessation of the conspiratorial activity by the defendant is not sufficient to prove withdrawal.  *United States v. Eppolito,* 543 F.3d 25, 49 (2d Cir. 2008); *Flaharty,* 295 F.3d at 192.  The defendant "must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." *Eppolito,* 543 F.3d at 49 (citations and internal quotation marks omitted).  "*Unless a conspirator produces affirmative evidence of withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators*." *United States v. Diaz,* 176 F.3d 52, 98 (2d Cir. 1999) (quoting *United States v. Greenfield,* 44 F.3d 1141, 1150 (2d Cir. 1995)).

*United States v. Leslie*, 658 F.3d 140, 143 (2d Cir. 2011) (emphasis added).  Other than bald claims to the contrary (*see, e.g.*, Petition at 10-11;[8] Reply at 4 ("moving over 500 miles away to

---

[8]  In support of his assertion that he "left the conspiracy when he moved to Virginia in 2007," Shannawaz cites to his appellate reply brief.  (*See* Petition at 10 (citing "Def. Reply Brief P.8").)) In turn, in his appellate reply brief and unadorned by any citation, Shannawaz stated, *inter alia*, "[I]t is undisputed that the defendant Shahnawaz Baig had already moved to Virginia in 2007 and his Virginia Beach 7-Eleven franchise Store No. 33349A [wa]s not 'named' in this Indictment[,] was not 'forfeited' by the Government and, most importantly, never 'profited' by hiring and/or harboring any undocumented illegal aliens at this 7-Eleven store after 2007." *United States v. S. Baig*, No. 15-3328-cr, 2016 WL 3098537, at *8, App. Reply Br. (2d Cir. May 27, 2016).  However, since a memorandum of law "is not evidence at all," *Giannullo v. City of*

open his own store is definitive proof of [Shannawaz] withdrawing from the conspiracy"), there is no evidence of Shannawaz "making a clean breast to the authorities" or communicating his abandonment "in a manner reasonably calculated to reach co-conspirators," which would affirmatively demonstrate disavowing his criminal association with the Farrukh-Led Scheme. *Leslie*, 658 F.3d at 143. Shannawaz's 2007 move to Virginia, without more, is not enough to demonstrate the requisite abandonment especially considering Shannawaz purchased the Virginia Beach Store with a loan guaranteed by Farrukh, who previously exercised control over him. As the Government persuasively argues, "[e]ven if accepting [P]etitioner's version of the facts as true, such conduct was at most 'resignation from a criminal enterprise, [which,] standing alone, does not constitute withdrawal.'" (Opp'n at 14 (quoting *United States v. Berger*, 224 F.3d 107, 118 (2d Cir. 2000)) (second set of brackets in Opp'n).)

Moreover, contrary to Shannawaz's insistence, it is of little consequence that the Virginia Beach Store was not identified in the Indictment or there was a lack of evidence that stolen identities were used at the Virginia Beach Store, since Shannawaz is presumed to continue in the Farrukh-Led Scheme until the last overt act by any of the conspirators.[9]  *See Leslie*, 658 F.3d at

---

*N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003), Shannawaz's citation to his appellate reply brief fails to present any evidence to support his assertion made here.

[9]  Notably, in his opening brief to the Circuit Court submitted in support of his appeal of the Restitution Order, Shannawaz acknowledged:

> "Because the . . . defendants pled guilty to conspiring with one another, they are liable to pay restitution for acts of their co-conspirators committed in furtherance of the conspiracy." *United States v. Donaghy*, 570 F. Supp.2d 411, 423 (E.D.N.Y. 2008); *United States v. Boyd*, 222 F.3d 47, 50-51(2d Cir. 2000). The co-conspirators can be held to be proportionately or jointly and severally liable for restitution payments. *See* 18 U.S.C. § 3664(h); *United States v. Klein*, 476 F.3d 111, 114 (2d Cir. 2007); *United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004). The choice

143.  In failing to produce affirmative evidence of his withdrawal from the Farrukh-Led Scheme, Shannawaz also fails to meet his heavy burden of overcoming the presumption that the imposition of restitution was correct, especially in light of the Second Circuit's decision upholding his sentence, including the Restitution Order.  *See Rutigliano*, 887 F.3d at 108; *Mandanici*, 205 F.3d at 524.  Shannawaz's refusal to accept or misapprehension of conspiracy law does is not a basis for concluding that the imposition of the Restitution Order was irregular or invalid and, thereby, requiring the correction of some error.  *See Foont*, 93 F.3d at 78.  Rather, finding no fundamental error, there is no basis for granting the Petition.

       3.  <u>Inexplicable Delay</u>

Shannawaz's reliance on the Supreme Court's 2017 *Honeycutt* decision as a sound reason for not seeking appropriate relief earlier is without weight.  *See Honeycutt*, 137 S. Ct. 1626.  Notwithstanding that the *Honeycutt* decision was issued after the imposition of Shannawaz's Restitution Order, because of its inapplicability to restitution orders, it does not provide a compelling reason for Shannawaz's delay in seeking earlier relief.  In *Honeycutt*, the Supreme Court addressed whether, pursuant to 21 U.S.C. § 853, which provides for criminal forfeiture of certain properties involved in drug manufacturing and distribution crimes, a court may impose a *forfeiture* order jointly and severally upon a co-conspirator.  Relying upon that statute's language, the Supreme Court held that a defendant may not be held "jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire."  *Id.* at 1630; *see also id.* at 1632 (holding 21 U.S.C. § 853(a) limited forfeiture to

---

among these two options is a discretionary one for the Court.  *See Nucci*, 364 F.3d at 422 (citing ] 3664(h))."

*United States v. S. Baig*, No. 15-3328-cr, 2016 WL 691178, at *7, App. Br. (2d Cir. Feb. 15, 2016).

"tainted property; that is, property flowing from, or used in, the crime itself."); *United States v. Gioeli*, No. 08-cr-240, 2019 WL 6173421, at *2 (E.D.N.Y. Nov. 20, 2019)("The *Honeycutt* Court found joint and several liability to be[:] 'inconsistent with the statute's text and structure,' as well as its legislative history;" "contrary to other provisions in section 853;" and, *inter alia*, "inconsistent with traditional *forfeiture* laws." (emphasis added)).

Here, the order Shannawaz challenges is not a forfeiture order; nor was it imposed pursuant to 21 U.S.C. § 853, or a similarly worded statute, thereby making *Honeycutt* inapposite. Since *Honeycutt* addressed certain forfeiture orders, it provides no basis for Shannawaz's requested setting aside of the Restitution Order, especially as "[f]orfeiture and restitution are separate remedies with different purposes," with "[t]he purpose of restitution [being] to compensate victims for their losses." *United States v. Pescatore*, 637 F.3d 128, 137, 138 (2d Cir. 2011) (citations omitted)). Further, joint and several liability for restitution to victims is clearly authorized by statute, which the *Honeycutt* ruling does not change. *See* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."). *Cf., e.g.*, *United States v. Steel*, No. 11-cr-244, 2012 WL 5879143, at *1 (E.D.N.Y. Nov. 21, 2012) (recognizing the interplay between forfeiture and restitution, but noting their different purposes and stating the "remedies are authorized by separate statutes, and their simultaneous imposition offends no constitutional provision" (quoting *United States v. Kalish,* 626 F.3d 165, 169 (2d Cir.2010))). (*See also* Opp'n at 9 (arguing "the Second Circuit has upheld jointly- and severally- imposed restitution in the same opinion as it has vacated a joint and several forfeiture order under *Honeycutt*, implicitly recognizing that

22

[*Honeycutt*] i[s] inapplicable to restitution orders" (citing *United States v. Fiumano*, 721 F. App'x 45, 48 (2d. Cir. Jan. 23, 2018)).)

Even if that were not so, since *Honeycutt*'s holding is not retroactive, as Shannawaz would have this Court find, the Court further rejects his reliance upon it as a basis for setting aside his Restitution Order.  *See Gioeli*, 2019 WL 6173421, at *3 ("*Honeycutt* does not apply retroactively.") (collecting cases); *cf.*, *Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("A new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive.").  Since *Honeycutt* does not support his position and he has not offered any other compelling reason for the delay in seeking relief from the Restitution Order, Shannawaz cannot meet the second component of his *coram nobis* burden.

### 4. Lack of Showing Continued Suffering

Finally, the Court finds Shannawaz has not shown that he is continuing to suffer a legal consequence from his conviction which warrants *coram nobis* relief.  *Cf., e.g.*, *Kovac*, 744 F.3d at 49 (concluding that petitioner's "likely ineligibility to reenter the United States constitute[d] a continuing consequence of his conviction"); *United States v. Hernandez*, 283 F. Supp.3d 144, 154 (S.D.N.Y. 2018)(finding petitioner's imminent deportation satisfied her burden of establishing the "continuing to suffer" prong of the *coram nobis* test).  Rather, the consequences of which he complains are primarily financial in nature, *e.g.*, undergoing financial hardship, incurring legal bills, being liable for restitution, having to use food stamps, having a lien on his house for the restitution amount, and being unable to secure employment.  (*See* Petition at 18-19.)  Financial consequences are simply not the type of extraordinary circumstances warranting the granting of *coram nobis* relief to achieve justice.  Similarly, Shannawaz's non-financial consequence of having lost his civil rights to "vote or own a firearm" (*id.* at 19) does not rise to

the level of an extraordinary circumstance warranting *coram nobis* relief as felony disenfranchisement is not an uncommon collateral consequence of a criminal conviction.[10]  *See generally Hayden v. Pataki*, 449 F.3d 305, 316 (2d Cir. 2006)("[T]he practice of disenfranchising those convicted of crimes is of ancient origin."); *see id.* at 316 (discussing the history of disenfranchising laws in America).  In any event, Shannawaz baldly makes this claim without any elucidation, which is insufficient to make a showing of continued legal suffering necessitating *coram nobis* relief.  *See generally Gramercy Advisors, LLC v. Ripley*, No. 13-cv-9070, 2014 WL 5847444, at *3 (S.D.N.Y. Nov. 12, 2014) (citing *Tolbert v. Queens Coll.,* 242 F.3d 58, 75 (2d Cir. 2001) for proposition that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *see also id.* at *2 ("The absence of citations to authority further supports the Court's conclusion that this argument was not properly raised.").  In the same sparse manner, Shannawaz contends another non-financial consequence of his conviction, *i.e.*, that it "prohibits him from traveling to [Pakistan] to visit and help his family."  (*Id.* at 19.)  To the extent this argument can be construed as an example of Shannawaz continuing to suffer a legal consequence, it is both perfunctory and unsubstantiated and, therefore, will not be considered.  *See Gramercy Advisors, supra*.  Hence, in the absence of a persuasive showing that Shannawaz continues to suffer legal consequences from his conviction, his request for *coram nobis* relief is without merit.

* * *

The Court has considered Shannawaz's remaining arguments and finds them to be without merit.  In sum, as Shannawaz waived his right to collaterally challenge his sentence and,

---

[10]  Shannawaz does not indicate the particular felon disenfranchisement statutes to which he is subjected.

in any event, is unable to meet his burden of establishing the three prongs of the *coram nobis* test, *cf.*, *e.g.*, Kovacs, 744 F.3d 44, *with Siwek*, 2018 WL 3404144, at *5; *Molina*, 2018 WL 3918178, at *2, he is not entitled to the *coram nobis* relief he seeks.

IV.   <u>Conclusion</u>

Accordingly, **IT IS HEREBY ORDERED** that Shannawaz Baig's Petition is DENIED; and

**IT IS FURTHER ORDERED** that Shannawaz Baig's requests for a hearing and decision on his Petition (*see* ECF Nos. 358 & 365) are DENIED as moot.

SO ORDERED this 11th day of August 2020 at Central Islip, New York.

/s/  *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge